IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Maritza Dominguez Braswell**

Civil Action No. 22–cv–02145–MDB

T.D.F.,

     Plaintiff,

v.

KILOLO KIJAKAZI, Acting Commissioner of Social Security,

     Defendant.

---

**ORDER**

---

     Plaintiff T.D.F.[1] ["Plaintiff"] brings this action pursuant to the Social Security Act, 42

U.S.C. 405(g) ["the Act"], seeking judicial review of a final decision by Defendant Kilolo

Kijakazi, the Acting Commissioner of Social Security ["Commissioner"], denying her

application for disability insurance benefits. (Doc. No. 1.) Plaintiff has filed an Opening Brief,

the Commissioner has responded, and Plaintiff has replied. (["Opening Brief"], Doc. No. 10;

["Response"], Doc. No. 11; ["Reply"], Doc. No. 12.) The Commissioner has also filed the

Administrative Record. (Social Security Administrative Record ["AR"], Doc. No. 9.) After

carefully analyzing the briefs and the administrative record, the Court **AFFIRMS** the

Commissioner's final decision.

---

[1] Per D.C.COLO.LAPR 5.2, "[a]n order resolving a social security appeal on the merits shall
identify the plaintiff by initials only."

## BACKGROUND[2]

Plaintiff was born on October 22, 1984; she was 35 years old on the date she last met the insured status requirements of the Social Security Act. (AR 17, 42, 290.) Plaintiff alleges she has been disabled since February 15, 2018. (AR 19, 102.) Plaintiff has a college degree. (AR 19.) Plaintiff served in the Air Force from 2006 to 2012, specializing in explosive ordinance disposal. (AR 48, 83–84.) She was twice deployed to Afghanistan and once to Iraq. (AR 83–84.) The remainder of Plaintiff's employment history includes positions as an instructor in explosive ordinance and a food delivery driver. (AR 28, 84.)

On May 29, 2019, Plaintiff applied for disability insurance benefits, pursuant to Title II of the Act, alleging disability beginning February 15, 2018. (AR 15.) The Commissioner denied Plaintiff's claim on July 23, 2020. (AR 155–67.) Plaintiff then sought reconsideration, which was also denied on December 19, 2020. (AR 168–74.) Plaintiff subsequently successfully requested a hearing before an administrative law judge ["ALJ"], which occurred on October 20, 2021. (AR 175–76, 40–99.) Plaintiff was accompanied at the hearing by her attorney. (AR 43.) The ALJ also heard testimony from a psychologist and a vocational expert. (AR 49–76, 88–97.) On November 2, 2021, the ALJ issued a written decision denying benefits, and on June 24, 2022, the Appeals Counsel denied Plaintiff's request for review. (AR 1–6, 15–38.) Plaintiff then filed the instant appeal. (Doc. No. 1.)

At the 2021 hearing, the ALJ heard testimony from Plaintiff regarding her alleged disability. Plaintiff testified that she has posttraumatic stress disorder ["PTSD"] stemming from

---

[2] The following background focuses only on the elements of Plaintiff's history that are relevant to the court's analysis.

her deployments to Afghanistan and Iraq as well as from sexual abuse she suffered while in the Air Force.[3] (AR 81–88.) Plaintiff told the ALJ she has PTSD-related panic attacks "once or twice a week." (AR 86.) She testified that these panic attacks are often accompanied by flashbacks to her deployment, which can be triggered by "sights, sounds, [and] smells." (*Id.*) Plaintiff testified that she is "always on alert." (AR 98.) Plaintiff said that these flashbacks sometimes occurred during her shifts as a food delivery person, requiring her to call her wife to calm down. (AR 88.) Eventually, Plaintiff's wife began joining her on deliveries. (*Id.*) Plaintiff said that her "main barrier" to being able to work was "interacting with people." (AR 81.) To this end, Plaintiff testified that her wife eventually began making food deliveries while Plaintiff sat in the car, that she leaves the house infrequently, that she will stay in the car or hotel room when she accompanies her wife on errands or trips, and that she generally struggles with being in public. (AR 76, 78, 84, 87, 88.) She also testified that she had "interpersonal issues" with former managers whom she perceived as poor leaders, leading to her being fired from those jobs. (AR 83, 87.) Plaintiff testified that she has memory struggles, saying that she sometimes has "issues remembering steps[,] ... issue[s] remembering appointments," and at times will forget why she was doing something. (AR 82, 86–87.) Plaintiff stated that her medication makes her feel "foggy" and causes her "issues concentrating." (AR 82.) Plaintiff also sometimes "forget[s]" to eat or to maintain her hygiene and needs to be reminded by her wife. (AR 87.) Plaintiff testified that she attended individual therapy sessions through the Veteran's Administration and Thriveworks, which had been "help[ful] on some issues" related to her PTSD. (AR 80.)

---

[3] Plaintiff also testified that she has fibromyalgia. (AR 78–80.) However, Plaintiff's fibromyalgia is not at issue in her appeal.

Plaintiff lives with her wife, who shares custody of two children with the children's father. (AR 77.) Plaintiff testified that she has a good relationship with the children, though sometimes they make her "irritable," requiring her to "kind of get away [from them]." (AR 77, 82.) Plaintiff further reported that she spends most of her day watching television but occasionally helps with household chores, such as mowing the lawn and taking out the garbage. (AR 76–77.)

At the first step of the Commissioner's five-step sequence for making determinations,[4] the ALJ found that Plaintiff was not engaged in substantial gainful activity from her alleged disability onset date of February 15, 2018, through her date last insured, September 30, 2020. (AR 18.) At the second step, the ALJ found that Plaintiff lives with the "severe impairments" of PTSD and fibromyalgia. (*Id*.) At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in the regulations. (AR 19–20.)

Because he concluded that Plaintiff did not have an impairment or combination of impairments that meets the severity of the listed impairments, the ALJ found that Plaintiff has the following residual functional capacity ("RFC"):

> the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) subject to the following limitations: lifting and/or carrying

---

[4] The Social Security Administration uses a five-step sequential process for reviewing disability claims. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step process requires the ALJ to consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988.) The claimant has the burden of proof through step four; the Social Security Administration has the burden of proof at step five. *Lax* v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007).

> twenty pounds occasionally and ten pounds frequently; sitting six hours in an eight-hour workday; standing and/or walking six hours in an eight-hour workday; occasional climbing of ramps, stairs, ladders, ropes, or scaffolds; occasional stooping, crouching, kneeling, and crawling; occasional exposure to fumes, odors, and/or irritants; can tolerate moderate levels of noise; never working around unprotected heights or moving and/or dangerous machinery; simple, routine, repetitive tasks; no interaction with the public; occasional interaction with coworkers and supervisors; capable of maintaining concentration, persistence, and pace for extended periods of two hour segments during a normal workday with normal breaks in work that consists of no more than simple, routine, repetitive tasks; and low stress work defined as occasional decision-making and occasional changes in the work setting.

(AR 20.)

In establishing this RFC, the ALJ evaluated Plaintiff's subjective testimony, the objective medical evidence, and the opinion evidence. (AR 20–27.) The ALJ determined that "the [Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" (AR 21.) The ALJ likewise concluded that the "objective medical evidence does not support the extent of the [Plaintiff's] alleged symptoms and resulting functional limitations." (*Id.*) In making this determination, the ALJ reviewed treatment notes from Plaintiff's mental health examinations, beginning with her initial examination for PTSD on January 16, 2015. (AR 21–24.)

In addition, the ALJ discussed the opinion evidence, first reviewing the opinions of the non-examining Division of Disability Determination reviewers, Dr. Douglas Hanze and Patrice G. Solomon. (AR. 25.) Dr. Hanze opined that Plaintiff's symptoms "may interfere with completion of a normal workday or workweek or may cause inconsistent pace," however, if Plaintiff's occupation was limited to "simple instructions, ordinary routines, and simple work

decision-making," such limitations could be avoided. (AR 25; *see* AR 102–123.) Dr. Solomon

agreed with the assessment of Dr. Hanze. (AR 25; *see* AR 124–51.) In considering whether those

opinions were persuasive,[5] the ALJ noted that to some extent they were "consistent with the

[Plaintiff's] treatment records and evidence she is capable of simple, routine, repetitive tasks

with limitations for concentration, persistence, and pace, as well as for changes in the work

setting." (AR 25.) But on the other hand, the opinions "failed to assess any limitations in social

functioning." (*Id.*)

   The ALJ next considered opinions from treating practitioners Dr. Julia Hajibrahim and

Casandra J. Fallon, each of whom opined, using counsel-provided Mental Residual Functional

Capacity Statement forms,[6] that Plaintiff's PTSD presented a serious and effectively debilitating

obstacle in her ability to be suitable for gainful employment, regardless of any limitations

imposed on her workload or work environment. (AR 25–26; *see* AR 920–22, 1126–28, 1233–36,

1251–53.) Among other things, Dr. Hajibrahim and Ms. Fallon were of the opinion that Plaintiff

would be "off task" at least 30% of the workday, likely to be unable to complete four or more

---

[5] The regulations governing the agency's evaluation of medical evidence were revised effective
March 27, 2017. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed.
Reg. 5844 (Jan. 18, 2017), *as amended in* 82 Fed. Reg. 15132 (Mar. 27, 2017). Under the new
regulations, "the ALJ does 'not defer or give any specific evidentiary weight, including
controlling weight, to any medical opinion(s)[,] ... including those from [the claimant's] medical
sources.' Rather, the ALJ considers the persuasiveness of those opinions using five factors:
supportability; consistency; relationship with the claimant; specialization; and other factors, such
as 'a medical source's familiarity with the other evidence in a claim.'" *Zhu v. Comm'r, SSA*, No.
20-3180, 2021 WL 2794533, at *6 (10th Cir. July 6, 2021), *cert. denied sub nom. Zhu v.
Kijakazi*, 142 S. Ct. 2838, 213 L. Ed. 2d 1066 (2022) (internal citations omitted) (citing 20
C.F.R. § 404.1520c(a); § 416.920c(a); § 404.1520c(c); and § 416.920c(c)).

[6] Ms. Fallon also submitted a short letter describing her opinion of Plaintiff's condition. (AR
1233.)

eight-hour workdays per month, and likely to be absent from work four or more days per month. (AR 920–22, 1251–53.) But the ALJ did not find those opinions persuasive. The ALJ observed the opinions were "inconsistent with the evidence of the record" because they clashed with Plaintiff's "generally unremarkable mental status examination, except for some waxing and waning of her mood." (AR 26.) Further, the ALJ found that Dr. Hajibrahim and Ms. Fallon's opinions "fail[ed] to describe function-by-function limitations resulting from the [Plaintiff's] impairments."[7] (*Id.*)

Finally, the ALJ considered the opinion of Dr. David Peterson, who testified during Plaintiff's hearing before the ALJ. (AR 27; *see* AR 49–76.) Dr. Peterson testified, among other things, that Plaintiff had "functional limitations that included no public interaction, occasional interaction with coworkers and supervisors, no team/tandem work, avoiding frequent changes or decisions regarding changes, and simple repetitive tasks." (AR 27.) The ALJ found this opinion persuasive and "consistent ... with the objective evidence as a whole." (*Id.*)

At step four, the ALJ determined that Plaintiff could not perform any past relevant work. (AR 27–28.) However, at step five, the ALJ determined that, through the date last insured, "there were jobs that existed in significant numbers in the national economy that the claimant could have performed" based on her age, education, work experience, and RFC. (AR 28.) The ALJ determined that Plaintiff could perform such jobs as a housekeeper, mail sorter, machine egg washer, food sorter, and small parts assembler. (AR 28–29.) Therefore, the ALJ concluded that Plaintiff was not under a "disability" through the date last insured, as defined by the Act, and

---

[7] The ALJ found the opinion of Judith Kirwan, Ma, LMFT, who also opined that Plaintiff could not be gainfully employed on a sustained basis, similarly unpersuasive. (AR 27.) However, Plaintiff does not challenge this finding.

denied her applications for benefits. (AR 29–30.) That denial prompted Plaintiff's request for
judicial review. (Doc. No. 1.)

## STANDARD OF REVIEW

In social security disability cases, the court's review is limited to determining whether:
(1) substantial evidence supports the Commissioner's decision; and (2) whether the
Commissioner's decision comports with relevant legal standards. *Vallejo v. Berryhill*, 849 F.3d
951, 954 (10th Cir. 2017); *see generally* 42 U.S.C. § 405(g). "Substantial evidence is more than a
mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to
support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007) (internal citation
omitted); *accord Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992) ("Evidence is not
substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion.").
Any conflict in the evidence is to be resolved by the ALJ, and not the court. *See Rutledge v.
Apfel*, 230 F.3d 1172, 1174 (10th Cir. 2000) ("We will not reweigh the evidence."). A finding of
"no substantial evidence" is proper only if there is a "conspicuous absence of credible choices"
or "no contrary medical evidence." *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992)
(quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). Further, "if the ALJ failed to
apply the correct legal test, there is ground for reversal apart from a lack of substantial
evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

## ANALYSIS

Plaintiff raises one issue on appeal, arguing that the ALJ "failed to properly evaluate the
consistent opinions of treating psychiatrist Julia Hajibrahim, M.D., and treating therapist
Cassandra Fallon, MA, LMT." (Doc. No. 10 at 1.) Specifically, Plaintiff contends that the ALJ

failed to adequately consider the "consistency" and "supportability" of Dr. Hajibrahim and Ms. Fallon's opinions. (*Id.* at 10–19.)

This case is governed by the revised regulations for evaluating opinions that the agency promulgated on March 27, 2017, for claims filed after that date. Under these regulations, "the Commissioner will consider the persuasiveness of each medical source's opinions using five factors: (1) supportability; (2) consistency; (3) relationship with the claimant (which encompasses the length of treatment relationship, frequency of examinations; purpose and extent of treatment relationship, and examining relationship); (4) specialization; and (5) other factors tending to support or contradict a medical opinion or prior administrative medical finding." *Harris v. Saul*, No. 19-v-03715-NRN, 2021 WL 406080, at *2 (D. Colo. Feb. 5, 2021) (citing 20 C.F.R. §§ 404.1520c(c), 416.920c(c)).

"Supportability and consistency are the two most important factors for the ALJ to consider." *R.J.P.A. v. Kijakazi*, No. 21-CV-02009-KLM, 2022 WL 4285712, at *4 (D. Colo. Sept. 16, 2022). As to supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)...the more persuasive the medical opinions... will be." 20 C.F.R. § 404.1520c(c)(1). "The supportability analysis looks at whether the medical source's opinions are supported by the source's own notes, diagnoses, and explanations." *J.T.L. v. Kijakazi*, No. 22-CV-02343-NYW, 2023 WL 5017241, at *4 (D. Colo. Aug. 7, 2023) (citing *Crystal R. E. v. Kijakazi*, No. 20-cv-00319-SH, 2022 WL 446023, at *6 (N.D. Okla. Feb. 14, 2022)). "Conversely, the consistency factor requires a comparison between the medical source opinion and 'the evidence from other medical sources and nonmedical sources' in the record." *Id.* (quoting 20 C.F.R. §§

404.1520c(c)(2)). "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2).

"An ALJ must explain how he or she 'considered the supportability and consistency factors.' 20 C.F.R. § 416.920c(b)(2). An ALJ must consider factors three through five (relationship with the claimant, specialization, and other factors) but is not required to explicitly discuss them unless there are differing medical opinions on an issue and those opinions are equally well-supported and consistent with the record." *Nielsen v. Comm'r, SSA*, No. 21-4136, 2022 WL 15570650, at *2 (10th Cir. Oct. 28, 2022) (citing 20 C.F.R. § 416.920c(b)(2), (3)).

## A. The Opinions of Dr. Hajibrahim and Ms. Fallon

Dr. Hajibrahim and Ms. Fallon each filled out counsel-provided Mental Residual Functional Capacity Statement forms. (AR 920–22, 1251–53.)

On July 17, 2019,[8] Dr. Hajibrahim opined, as described by Plaintiff,

that Plaintiff's impairments and symptoms would preclude performance of understanding, remembering, and carrying out very short and simple instructions for 15 percent of the workday. She would be precluded from sustaining concentration and memory for 15 to 20 percent of the workday. She would be precluded from social interaction for 10 to 20 percent of the workday. She would be precluded from adapting within the workplace for 15 to 20 percent of the workday. Dr. Hajibrahim further opined that Plaintiff will be off task 30 percent of an eight-hour workday and workweek. She was likely to be absent from work four or more days per month, and was unable to complete an eight-hour workday four or more days per month. Dr. Hajibrahim also opined that Plaintiff was unable to obtain and retain full-time work in a competitive work setting.

---

[8] Dr. Hajibrahim completed an updated form on March 24, 2021, outside of the period under consideration by the ALJ, in which she reached the same conclusions as her original assessment. (Doc. No. 10 at 7; AR 1126–28.)

(Doc. No. 10 at 7 (citing AR 1251–53) (internal citations omitted).

       Similarly, on June 10, 2019, Ms. Fallon opined, as described by Plaintiff,

      that Plaintiff's PTSD and adjustment disorder impairments would preclude the
      performance of understanding and memory and sustained concentration for 15 to
      20 percent of an eight-hour workday. Her ability to carry out very short and
      simple instructions was precluded for 15 percent of the workday. Social
      interaction was precluded 15 to 20 percent of the workday. Adaptation was also
      precluded 15 to 20 percent of the workday. Therapist Fallon opined that Plaintiff
      would be off task for more than 30 percent of the workday, absent four days or
      more per month, unable to complete an eight-hour workday four days or more per
      month, and unable to obtain and retain work in a fulltime, competitive setting.

(Doc. No. 10 at 6–7 (citing AR 921–22) (internal citations omitted).)

       The above opinions by Dr. Hajibrahim and Ms. Fallon, are contained in "check-box"

forms, but Ms. Fallon also filed an undated letter describing her opinion of Plaintiff's challenges.

(AR 1233.) The letter adds some color to Ms. Fallon's opinions in the Mental Residual

Functional Capacity Statement form, saying that Plaintiff struggles to "adjust[ ] to simple life

changes," regulate her emotions in "high conflict or stressful situations" or fully "understand and

remember simple instructions, carry out detailed instructions to tasks, and maintain concentration

for an extended period of time." (*Id.*) The letter also states that Plaintiff "has difficulty

maintaining typical relationships with co-workers without becoming distracted or distracting

others with extreme behaviors and interruptions." (*Id.*) It also reiterates Ms. Fallon's conclusion

that Plaintiff "will not be suitable for gainful employment" (*Id.*)

### B.  The ALJ's Analysis of Dr. Hajibrahim and Ms. Fallon's Opinions

       In his written decision, the ALJ first considered Dr. Hajibrahim's opinion, accurately

recounting Dr. Hajibrahim's finding in the Mental Residual Functional Capacity Statement as

follows:

Julia A. Hajibrahim, M.D. completed a Mental Residual Functional Capacity Statement on March 24, 2021 and on July 17, 2019. Dr. Hajibrahim opined that the claimant's impairments would preclude performance of understanding and remembering and sustained concentration and memory for fifteen-to-twenty percent of an eight-hour workday. Her ability to ask simple questions or request assistance was precluded for ten percent of the day. Social interaction was otherwise precluded fifteen-to-twenty percent of an eight-hour workday. Adaptation was also precluded fifteen-to-twenty percent of the workday. She was also noted to have difficulty hearing and memory lapses. She needed to avoid temperature extremes and could not tolerate noise or fumes. She would be off task thirty percent of an eight-hour workday and would be absent four or more days per month. She would be unable to complete an eight-hour workday four or more days per month. She was unable to obtain and retain work in a competitive setting eight hours per day, five days per week for a continuous period of at least six months. Dr. Hajibrahim opined that she had not been able to be gainfully employed since May 2018.

(AR 25–26.) The ALJ then found Dr. Hajibrahim's opinions were not persuasive, saying they were "inconsistent with the evidence of the record." (AR 26.) The ALJ first found that the form completed by Dr. Hajibrahim "fail[ed] to describe specific, function-by-function limitations resulting from Plaintiff's impairments." (*Id.*) Further, the ALJ found that "treatment records do not document findings of memory lapses other than [Plaintiff's] occasional subjective report, and that Plaintiff's recorded mental status examinations were "unremarkable ... except for some waxing and waning of her mood[.]" (*Id.*) In total, the ALJ concluded that the "significant findings" made by Dr. Hajibrahim—specifically that Plaintiff would be off task 30% of a workday and absent from work or unable to complete a workday four times per month—were "inconsistent" with the objective medical evidence on record.[9] (*Id.* (citing AR 1126–28, 1234–36, 1251–53).)

---

[9] Additionally, the ALJ found that Dr. Hajibrahim's opinion Plaintiff "was unable to retain work in a competitive setting" was a finding reserved for the Commissioner. (AR 26); *see* 20 C.F.R. § 404.1520b(c)(3)(i).

The ALJ next considered the opinion of Ms. Fallon, accurately recounting her opinion as

follows:

> Cassandra J. Fallon, MA, LMFT provided a letter in which she opined that the
> claimant's symptoms impacted her ability to be sustainably employed, including
> difficulty adjusting to simple life changes, struggle with emotional regulation in
> high conflict or stressful situations, and nightmares. She had difficulty with
> concentration and memory, impacting her ability to understand and remember
> simple instructions, carry out detailed instructions to tasks, and maintain
> concentration for an extended period of time. She had difficulty maintaining
> typical relationships with coworkers without being distracted or distracting others
> with extreme behaviors and interruptions. Her difficulty to complete a normal
> workday also included inability to deal appropriately with change and manage
> stress or semi-skilled or skilled work. Ms. Fallon opined that she would not be
> suitable for gainful employment. Ms. Fallon also completed a Mental Residual
> Functional Capacity Statement on June 10, 2019, in which she opined that the
> claimant was precluded from various mental tasks from ten-to-twenty percent of
> the workday. She would have difficulty hearing, memory lapse, and should avoid
> noise. Ms. Fallon opined that the claimant would be off task more than thirty
> percent of the day, absent and unable to complete a day more than four days a
> week, and unable to sustain work activity.

(AR 26.) The ALJ then found "[a]s with the opinions of Dr. Hajibrahim," Ms. Fallon's opinions

were "unpersuasive" because they were "inconsistent" with the "objective medical evidence."

(*Id.*) The ALJ noted that the form completed by Ms. Fallon was the "same check box form" Dr.

Hajibrahim completed, which "fails to describe specific, function-by-function limitations

resulting from the claimant's impairments." (*Id.*) The ALJ again found that the "significant

findings" made by Ms. Fallon were "inconsistent" with Plaintiff's "unremarkable" mental status

examinations.[10] (*Id.* (citing AR 920–22, 1233).)

### C.  The Arguments Before This Court

---

[10] The ALJ also found that the opinion that Plaintiff "was unable to retain work in a competitive
setting" was a finding reserved for the Commissioner. (AR 26); *see* 20 C.F.R. §
404.1520b(c)(3)(i).

Plaintiff argues that the mental RFC assigned to Plaintiff by the ALJ "is not supported by substantial evidence and is the product of legal error," because the ALJ erred in his consideration of Dr. Hajibrahim and Ms. Fallon's opinions. (Doc. No. 10 at 10.) Specifically, Plaintiff contends that the ALJ failed to adequately consider the "most important" factors under the new regulations: the "supportability" and "consistency" of Dr. Hajibrahim and Ms. Fallon's opinions. (*Id.* at 10–16); *see* 20 C.F.R. § 404.1520c(c). Additionally, Plaintiff appears to argue that the ALJ's conclusion—that Dr. Hajibrahim and Ms. Fallon's opinions were unpersuasive—was not supported by substantial evidence. (Doc. No. 10 at 16–19.) In response, the Commissioner argues that the ALJ properly applied the relevant legal standards in considering Dr. Hajibrahim and Ms. Fallon's opinions, that the ALJ's conclusion clears the substantial evidence threshold, and that Plaintiff inappropriately asks the Court to re-weigh the evidence considered by the ALJ. After review, the Court agrees with the Commissioner and affirms the ALJ's decision.

**D.  This Court's Conclusions About the ALJ's Decision**

As noted, under the new regulations, "[s]upportability and consistency are the two most important factors for the ALJ to consider" when evaluating the persuasiveness of a medical opinion. *R.J.P.A.*, 2022 WL 4285712, at *4. "The ALJ is therefore required to explain how [he] considered the supportability and consistency of a medical source's opinion[.]" *J.T.L*, 2023 WL 5017241, at *4. "The Regulations do not 'prescribe the depth at which the ALJ must discuss' the factors of supportability and consistency." *Id.* (quoting *Harp v. Kijakazi*, No. CV 1:21-0275-KRS, 2022 WL 2341740, at *6 (D.N.M. June 29, 2022)). But at minimum, the ALJ must "provide an explanation that allows the reviewing court to follow his reasoning and communicates how he considered the factors of consistency and supportability for each medical

source's opinions." *Zambrano v. Kijakazi*, No. CV 1:20-1356 KRS, 2022 WL 1746765, at *5 (D.N.M. May 31, 2022).

At the outset, the Court notes that the ALJ did not expressly state he was conducting a consistency or supportability analysis in accordance with the controlling regulations.[11] That omission makes it somewhat difficult for this Court to confirm that the ALJ conducted those analyses. But difficult does not mean impossible. The Court can still review the analysis, follow the ALJ's reasoning, and determine whether or not the correct legal standards were applied. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012) ("Where, as here, [the reviewing court] can follow the adjudicator's reasoning in conducting [its] review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal."). So long as the ALJ describes the analytical reasoning in question, he or she does not have to use certain magic words to preface that reasoning. *See id.*

Here, the Court finds the ALJ applied the correct legal standards.[12] Moreover, the ALJ adequately considered Dr. Hajibrahim's and Ms. Fallon's opinions under the new regulations, and his conclusion was supported by substantial evidence. First, and with respect to supportability, the ALJ made the explicit finding that Dr. Hajibrahim's and Ms. Fallon's opinions did not align with their own treatment records or mental status examinations. (AR 26.) Further, the ALJ correctly noted that documents completed by Dr. Hajibrahim and Ms. Fallon

---

[11] The ALJ did, however, broadly cite the new regulations governing opinion evidence and stated they were applicable to his decision. (AR 24.)

[12] Indeed, the Court notes that Plaintiff does not seem to dispute that the ALJ at least considered supportability and consistency but rather argues that his consideration was insufficient and unsupported. (AR 25–26; Doc. No. 10 at 10–16.)

were essentially check-box forms that failed to describe specific function-by-function workplace

limitations, cite specific evidence from their evaluations of Plaintiff, or explain their conclusions.

(*Id.*) While Plaintiff is correct that an ALJ may not disregard check-box forms simply because

they are check-box forms, an ALJ can conclude that a check-box form, on its own, is less than

fully supported. *Cf. Frey v. Bowen*, 816 F.2d 508, 505 (10th Cir. 1987) ("[E]valuation forms,

standing alone, unaccompanied by thorough written reports or persuasive testimony, are not

substantial evidence."). Though the ALJ's supportability analysis was succinct, he adequately

addressed the essence of the supportability prong, and the Court sees no legal error. (AR 25–

26.) *J.T.L.*, 2023 WL 5017241, at *4 ("The supportability analysis looks at whether the medical

source's opinions are supported by the source's own notes, diagnoses, and explanations.").

Additionally, the ALJ's supportability analysis was backed by substantial evidence. In

her Opening Brief, Plaintiff points to several treatment notes—made over multiple years—to

argue that the ALJ's supportability determination as to Dr. Hajibrahm's opinion, was "invalid."

The treatment notes Plaintiff references include notes that she felt "overwhelmed," that she was

"hanging in there," felt "disconnected from a lot of things, at times felt increases in her

irritability and stress, and had felt "hopeless" for several days. (*See* Doc. No. 9 at 15–16; AR

686, 689, 717, 730, 864.) While these notes are all relevant to the analysis, there are other notes

by Dr. Hajibrahim that do not align with Dr. Hajibrahim's severely restrictive opinion. For

example, as pointed to by the Commissioner, Dr. Hajibrahim consistently found that Plaintiff

presented normally, with "normal speech, normal thought content, normal thought processes,

normal memory, normal concentration, and good insight and judgment" (Doc. No. 10 at 12;

(citing over 20 mental status examinations).) While substantial evidence requires more than a

"mere scintilla," it is not a stringent standard. *Flaherty*, 515 F.3d at 1070. And the Court cannot reweigh the evidence or second guess the ALJ's weighing of the evidence. *Fannin v. Comm'r, SSA*, 857 Fed.Appx. 445 (Mem), 448 (10th Cir. 2021) (saying that to "reweigh the evidence ... exceeds the scope of substantial-evidence review").[13] Dr. Hajibrahim's treatment notes clear the substantial evidence threshold for the ALJ's supportability determination.[14]

Second, and with respect to consistency, the ALJ spent several pages describing Plaintiff's entire history of treatment records, mental status examinations, and testimony (AR 21–24.) The ALJ ultimately found Dr. Hajibrahim and Ms. Fallon's "significant findings" were "inconsistent" with Plaintiff's "generally unremarkable" mental evaluations and "inconsistent with the objective evidence of the record." (AR 26); *S.P., v. Kijakazi*, No. 20-cv-00717-CMA, 2021 WL 6197283, at *5 (D. Colo. Dec. 30, 2021) ("Consistency ... is an all-encompassing inquiry that focuses on how well a medical source opinion is supported, or not supported, by the entire record." (quotation omitted)). Like with supportability, though the ALJ did not describe his consistency analysis in great detail, the Court finds he adequately considered Dr. Hajibrahim and Ms. Fallon's opinions against the record as a whole and thus finds no legal error as to this prong. *See Deherrera v. Saul*, No. 20-CV-00019-KMT, 2021 WL 1186671, at *12 (D. Colo.

---

[13] Indeed, the ALJ noted the "waxing and waning" of Plaintiff's mood across examinations. (AR 26.)

[14] Plaintiff also protests that the ALJ failed to adequately consider Ms. Fallon's letter. (AR 1233; *supra* at 11.) However, the Commissioner correctly points out that Ms. Fallon's letter essentially describes her check-box form opinion. It does not cite to treatment records or provide significant analysis or explanation for her opinion, and thus offers little evidentiary support. Accordingly, assuming *arguendo*, that the ALJ failed to adequately consider Ms. Fallon's letter, the error was harmless.

Mar. 30, 2021) ("While the ALJ could have been more detailed in his analysis of the regulatory factors, it is clear that he evaluated the opinion in relation to those factors.").

The ALJ's consistency determinations are also supported by substantial evidence. Plaintiff argues the ALJ failed to note that Dr. Hajibrahim and Ms. Fallon's opinions were consistent with one another as well as directionally consistent with that of Ms. Kirwan (*see supra* n. 7). (Doc. No. 9 at 11–12.) But the Court cannot find—and Plaintiff does not put forward—any case law suggesting that an otherwise acceptable consistency analysis can be negated by opinions the ALJ already found unpersuasive and unsupported. *See Jones v. Kijakazi*, No. CIV-21-1086-P, 2022 WL 2101517, at *6 (W.D. Okla. June 10, 2022) ("Plaintiff has not cited to any case law requiring an ALJ, when evaluating the consistency of a medical opinion, to consider the similarities between two medical opinions where the ALJ has determined that the opinions are not well supported by their own objective findings and are inconsistent with the remainder of the record.").[15]

In sum, the Court finds that the ALJ correctly applied the new regulations set forth in 20 C.F.R. § 416.920c in determining the persuasiveness of the medical opinions in relation to Plaintiff's RFC. The Court further finds the ALJ's analysis was supported by substantial evidence.

**CONCLUSION**

---

[15] Additionally, to the extent Plaintiff suggests the ALJ should have explicitly discussed the consistency between Dr. Hajibrahim and Ms. Fallon's opinions, the Court notes the ALJ could have also discussed the lack of consistency between these opinions and the opinions of Dr. Giullum and Dr. Hanze. (AR 24–25.)

For the foregoing reasons, it is **ORDERED** that the Commissioner's decision is

**AFFIRMED**.

Dated this 25th day of September, 2023.

BY THE COURT:

_____
Maritza Dominguez Braswell
United States Magistrate Judge